IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Melissa Bachochin, | : | Case No. 1:06-CV-486 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Shire, PLC, et al., | : | ORDER GRANTING PLAINTIFF'S |
| Defendants. | : | MOTION FOR LEAVE TO FILE A |
| | : | SECOND AMENDED COMPLAINT |
| | : | AND GRANTING IN PART AND |
| | : | DENYING IN PART DEFENDANT'S |
| | : | MOTION TO DISMISS |
| | : | |

This matter comes before the Court on Defendant Shire US Inc.'s Motion to Dismiss for

Lack of Subject Matter Jurisdiction and Failure to State a Claim and/or for Partial Summary

Judgment ("Motion to Dismiss"). (Doc. 18.)  Plaintiff Melissa Bachochin opposes the Motion to

Dismiss in part (doc. 19) and now brings before the Court a Motion for Leave to File a Second

Amended Complaint (doc. 21).  For the reasons that follow, the Court **GRANTS** Plaintiff's

Motion to Amend and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to

Dismiss.

I.      **BACKGROUND**[1]

In October 2000, the Defendant, Shire US, Inc. ("Shire"),[2] hired Melissa Bachochin[3] as a

_____

[1] The following facts are taken mainly from Plaintiff's First Amended Complaint (doc. 5)
and Proposed Second Amended Complaint (doc. 21-2).

[2] Defendant Shire US, Inc. ("Shire") is a foreign corporation headquartered in the United
States in Wayne, Pennsylvania.

[3] Plaintiff Bachochin is a resident of Ohio.

1

pharmaceutical sales representative in Texas.  (First Am. Compl., doc. 6 ¶ 7; Second Am. Compl., doc. 21-2 ¶ 7.)  Shire assigned Bachochin to a certain sales territory within Texas (id.), and rated her performance based on the sales figures for that territory (doc. 6 ¶ 10; doc. 21-2 ¶ 10).

Plaintiff alleges that she was qualified for the position and that during her time at Shire, she continually met or exceeded quarterly sales objectives as outlined in Quarterly Bonus Plan Agreements.  (Doc. 6 ¶ 8; doc. 21-2 ¶ 8.)  As a result, in 2002, Bachochin achieved "President's Club," an award given to the top sales representatives in the company.  (Id.)

Between 2002 and 2004, Bachochin became pregnant twice and took twenty-four weeks of approved maternity leave, twelve weeks in 2003 and twelve weeks in 2004. (Doc. 6 ¶ 9; doc. 21-2 ¶ 9.)  During both leave periods, Shire did not assign anyone to cover Bachochin's sales territory and she continued to bear responsibility for that territory's performance.  (Id.) Bachochin alleges that Shire unjustly failed to take this into consideration when rating her performance for 2003 and 2004, and that as a result, her performance ratings suffered.  (See doc. 6 ¶¶ 10, 13; doc. 21-2 ¶¶ 10, 13.)

Shire's performance rating scale uses a "fourth quarter to fourth quarter" market share comparison.  (Doc. 6 ¶ 10; doc. 21-2 ¶ 10.)  The system is based on a five- point scale, 1 being the lowest and 5 the highest.[4]  (See doc. 6 ¶ 11; doc. 21-2 ¶ 11.)  In her 2003 appraisal, Shire

---

[4]In Plaintiff's First Amended Complaint and proposed Second Amended Complaint, she describes a five-point performance scale system.  However, in Plaintiff's Memorandum Opposing the Defendant's Motion to Dismiss, Plaintiff refers to a four-point scale.

rated Bachochin's performance at "2."[5]  (Doc. 6 ¶ 11; doc. 21-2 ¶ 11.)  Plaintiff alleges that she

actually received a 3 under the company's system and that the 2 was based on improper

rounding.  Bachochin's 2004 performance appraisal was also a 2. Bachochin alleges that the

appraisal system used by Shire penalizes pregnant women and new mothers because it holds

them accountable for the market performance of their territories while the women are absent on

approved maternity leave.  (Doc. 6 ¶ 10; doc. 21-2 ¶ 10.)  Further, Bachochin contends that

because of this system, her ratings in 2003 and 2004 did not reflect her true performance level.

(Doc. 6 ¶ 13; doc. 21-2 ¶ 13.)

    In January 2005, prior to receiving her 2004 appraisal, Bachochin learned that her

husband might be relocated to a position in Cincinnati, Ohio.  (Doc. 6 ¶ 12; doc. 21-2 ¶ 12.)  At

that time, Bachochin requested a transfer to Ohio.  (Id.)  Shire informed Bachochin that her

eligibility for transfer would depend on 2004 performance rating, which was to be finalized

within the upcoming weeks.  (Id.)  Specifically, Shire told Bachochin that if she received another

"2" on her performance appraisal, she would be ineligible for a transfer.  (Id.)

    Bachochin received her 2004 appraisal, in which Shire rated her performance a 2, on

April 6, 2005.  (Doc. 6 ¶ 13; doc. 21-2 ¶ 13.)  Bachochin alleges that, like her 2003 performance

rating, this rating was discriminatory in that it punished her for taking maternity leave by holding

her accountable for her territory's performance during that approved leave period.  (Id.)

Bachochin further alleges that she complained to her supervisor that she did not believe the

_____

    [5] In her proposed Amended Complaint, Plaintiff alleges that she actually should have
received a 3 under the company's allegedly discriminatory rating system, but that due to
improper rounding, she instead received a 2.  (Doc. 21-2 ¶ 11.)  Plaintiff's Memorandum
Opposing the Defendant's Motion to Dismiss makes the opposite contention, that her correctly
rounded rating was a 2.  (Doc. 19 at 3.)

appraisal fairly reflected her performance, but that she was denied the opportunity to lodge a formal protest.  (Id.)  Instead, she was advised that a formal complaint "would do no good" and "that's just the way it is."  (Id.)  At that time, Shire again informed Bachochin that she was ineligible for a transfer due to her low performance ratings, despite the fact that, as Bachochin alleges, she has received positive Field Contact Reports and earned bonus incentives throughout her career.  (Id.)

Bachochin continued to apply for a transfer to no avail[6] (doc. 21-2 ¶ 15), and was eventually forced to resign in June, 2005 when her family moved to Ohio (doc. 6 ¶ 14; doc 21-2 ¶ 14).  The following year, on January 9, 2006, Bachochin filed a charge of gender discrimination against Shire with the U.S. Equal Employment Opportunity Commission ("EEOC") District Office in Dallas, Texas.  (Doc. 6 ¶16; doc. 21-2 ¶ 17; Second Am. Compl., Ex. A.)  On March 24, 2006, the EEOC issued a dismissal and notice of right to sue to Bachochin.  (See First Am. Compl., Ex. B, doc. 6-4; Second Am. Compl., Ex. B, doc. 21-5.)   In that notice, the EEOC stated that the reason for dismissal was "Charging Party Refused to Cooperate."  (See id.)  On June 16, 2006, Plaintiff received a second notice of right to sue letter from the EEOC.[7]  (See First Am. Compl., Ex. C, doc. 6-5; Second Am. Compl., Ex. C, doc. 21-6.)  Stating a different reason for the EEOC's dismissal of Bachochin's complaint, the second notice of right to sue indicated that the agency was "unable to conclude that the information

---

[6] In her proposed Second Amended Complaint, Bachochin alleges that under Shire's system, the decision-maker for transfer requests was the gaining manager, who in this case would have been the Ohio manager.  (Doc. 21-2 ¶ 15.)

[7] Plaintiff's memorandum opposing the Defendant's motion to dismiss states that the EEOC "reconsidered its decision" after receiving more information from Plaintiff about the allegations.  (Doc. 19 at 4.)  Shire disputes the classification of "reconsider."

obtained establishes violations of the statutes."  (Id.)

Meanwhile, at some time between October 2005 and January 2006, Bachochin learned from Shire's website that there was an open Professional Sales Representative position for the Mason/Cincinnati/Dayton, Ohio area.  (Doc. 6 ¶ 15; doc. 21-2 ¶ 16.)  Bachochin applied for the position and received a rejection letter from Shire on March 14, 2006.  (Doc. 6 ¶¶ 15, 18; doc. 21-2 ¶¶ 16, 19.)  She alleges that Shire did not hire her due to the discriminatory appraisals she received and in retaliation for having filed a charge of discrimination with the Texas EEOC office.  (Doc. 6 ¶ 19; doc. 21-2 ¶ 20.)  In her proposed Second Amended Complaint, Bachochin alleges that subsequent to receiving the rejection letter, she filed a charge of sex discrimination and retaliation against Shire with the EEOC office in Cincinnati, Ohio.  (Doc. 21-2 ¶ 21; Second Am. Compl., Ex. D, doc. 21-7.)   Bachochin received a "right to sue" letter from the EEOC on January 31, 2007 subsequent to the filing of this present case.  (Doc. 21-2 ¶ 22; Second Am. Compl., Ex. E, doc. 21-8.)

Bachochin filed the instant suit against Shire, PLC on July 24, 2006.  (Doc. 1.)  On September 26, 2006, this Court granted the Plaintiff's motion to substitute Shire US Inc. as the Defendant (doc. 4), and two days later, Bachochin filed her First Amended Complaint (doc. 6). In her First Amended Complaint, Bachochin alleges the following five claims: (1) "Failure to Hire Gender Discrimination" in violation of Ohio Rev. Code § 4112.02; (2) "Retaliation" in violation of Ohio Rev. Code § 4112.02; (3) "Failure to Hire and Retaliation" in violation of Ohio Public Policy; (4) gender discrimination in violation of Title VII of the Civil Rights Act of 1964; and (5) pregnancy discrimination in violation of  Tex. Code Ann. § 21.051. (Doc. 6.)

On June 29, 2007, Defendant filed its motion to dismiss Plaintiff's First Amended

5

Complaint.  (Doc. 18.)  On August 16, 2007, shortly after Defendant's motion to dismiss became

ripe, Plaintiff filed her motion for leave to file a second amended complaint.  (Doc. 21.)

Plaintiff's proposed Second Amended Complaint drops the Ohio public policy and Texas

statutory discrimination claims and states the following four claims: (1) "Failure to Hire Gender

Discrimination" in violation of Ohio Rev. Code § 4112.02; (2) "Retaliation" in violation of Ohio

Rev. Code § 4112.02; (3) "Pregnancy Discrimination" in violation of Ohio Rev. Code § 4112.02;

and (4) gender discrimination in violation of Title VII of the Civil Rights Act of 1964.  Below,

the Court first addresses Plaintiff's Motion for Leave to File a Second Amended Complaint.

Then, the Court turns to Defendant's Motion to Dismiss.

## III.    PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

The Supreme Court has indicated that leave to amend should be "freely given," stating

that "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith, or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc.– the leave should, as the rules require, be 'freely

given.'" Foman v. Davis, 371 U.S. 178, 182 (1962), quoted in Monette v. Electronic Data

Systems Corp., 90 F.3d 1173, 1189 (6th Cir. 1996); see also Fed. R. Civ. P. 15(a)(2) ("The court

should freely give leave [to amend] when justice so requires.").

The decision of whether to allow an amended complaint falls squarely within the

discretion of the court. Martin v. Associated Truck Lines, Inc., 801 F.2d 246, 248 (6th Cir.

1986).  In making that decision, the court may consider a number of factors, including "[u]ndue

delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated

failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."  Hageman v. Signal L. P. Gas, Inc., 486 F.2d 479, 484 (6th Cir. 1973); see also Head v. Jellico Housing Authority, 870 F.2d 1117, 1123 (6th Cir. 1989).  Certain of those factors carry more weight than others.  Thus, while a court may consider undue delay, the presence of delay without more "is not [a] sufficient reason to deny a motion to amend."  Hageman, 486 F.2d at 484.  In contrast, "[n]otice and substantial prejudice to the opposing party are critical factors."  Id.

In the instant case, Plaintiff's Motion for Leave to File a Second Amended Complaint states only that:

> Plaintiff Melissa Bachochin hereby moves this Honorable Court for leave to file her Second Amended Complaint with jury demand.  The Complaint drops causes of action no longer viable, simplifying the case, and adds documentation from the EEOC of the proper foundation for a charge and right to sue.  Under Fed. Rule Civ. Pro. 15(a), such amendments "shall be freely granted when justice requires."

(Doc. 21 at 1.)  Plaintiff attached her proposed Second Amended Complaint, which drops the Ohio public policy and Texas statutory discrimination claims and adds a claim of pregnancy discrimination under Ohio law.  (See doc. 21-2.)  Additionally, the proposed complaint alleges the following new facts:

> 11. . . .However, the "2" [performance rating] for 2003 was a result of improper rounding, and should have been a "3" by the company's own system. The rating was rounded improperly as discrimination for Plaintiff's pregnancy.

> 12. [That Shire told her that the receipt of a 2 for 2003 would make her ineligible for transfer] as that would supposedly give her two "2s" in a row.

> 15.  Plaintiff continued to apply for a transfer up until she resigned.  Under Shire's system, the decision maker for the transfer is the gaining manager (in this case, the Ohio manager).

7

21.  Plaintiff subsequently filed a charge with the Cincinnati, Ohio EEOC Office.  A true copy of this charge is attached as exhibit D.

22.  Finally, Plaintiff received a "right to sue" letter based on this charge, attached as Exhibit E, giving her a right to sue, such letter dated January 31, 2007. Suit had already been filed at that point, and this letter authorized the suit as proper.

(Id. ¶¶11-12, 15, 21-22.)

Shire argues that the Court should deny the proposed amendments for several reasons, including: 1) Bachochin's failure to file a memorandum in support of the motion; 2) absence of good cause; 3) Bachochin's delay in filing; 4) prejudice to the company; 5) futility of the amendments; and 6) the pendency of the motion to dismiss.  (See doc. 22)

As to the first and second bases, Defendant argues that Bachochin failed to file a memorandum in support of her motion as required under S.D. Ohio Civ. R. 7.2(a)(1) and, in connection, fails to demonstrate good cause.  Though the statement included in Plaintiff's motion is brief, it concisely states the bases for her motion.  Accordingly, Plaintiff's motion falls within the spirit of Local Rule 7.2(a)(1), which requires that "[a]ll Motions and applications tendered for filing shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, with citation of authorities relied upon."  Plaintiff's motion cites sound bases for seeking an amendment of her complaint, specifically, that she will simplify matters and streamline the case by dropping certain claims that she concedes are no longer viable.  In addition, Bachochin provides proof necessary for the Court to determine whether she has met the jurisdictional prerequisites of bringing her statutory discrimination claims.  Bachochin did not receive the third notice of right to sue letter until after filing suit and, therefore, could not have included it in her original or First Amended Complaint.  There is certainly cause for providing

8

such information and the Court does not find, as discussed below, that such amendments will prejudice Defendant.

As to Defendant's third basis for denial, Defendant claims that Plaintiff unduly delayed the filing of the proposed amendment. Looking at the procedural history of this case, the Court notes that Bachochin filed her motion to amend well before the discovery cutoff and the dispositive motion deadline. The amendments that Plaintiff proposes do not substantially change the nature of her suit. Accordingly, even considering the alleged delay in connection with the other factors, the Court does not find Plaintiff's delay to be so severe as to warrant denial of her motion to amend.

Defendant next argues that allowing the proposed amendments would unduly prejudice Shire because it will moot Defendant's Motion to Dismiss and prevent the Court from dismissing Plaintiff's Ohio public policy and Texas statutory claims with prejudice. According to Defendant, this leaves open the possibility that Plaintiff will seek to re-file those claims in the future. Defendant's argument is not persuasive. As indicated above, Plaintiff has stated on the record in her motion to amend that she is dropping those claims because she realized that they are "no longer viable." (Doc. 21 at 1.) Furthermore, Defendant admits that the possibility that Plaintiff will file another suit reinstituting the dropped claims is "unlikely." (Doc. 22 at 6.) Thus any prejudice that may result to Defendant is purely speculative. Finally, contrary to Defendant's assertion, the drafting of its Motion to Dismiss will not be rendered an exercise in futility. Instead, to the extent that Plaintiff's Second Amended Complaint raises the same claims as her First Amended Complaint, the Court considers Defendant's Motion to Dismiss below.

Finally, Defendant next argues that the amendments Plaintiff seeks to make to her Complaint are futile and should therefore not be permitted.  Referencing the arguments raised in its motion to dismiss Plaintiff's First Amended Complaint, Defendant claims that Plaintiff's proposed Second Amended Complaint contains many of the same fatal flaws as the First Amended Complaint.  To the extent this is true, the Court addresses the possible futility of the proposed amendments below through its analysis of Defendant's Motion to Dismiss.  Finding no other reason to deny Plaintiff's motion for leave to file a Second Amended Complaint, the Court hereby grants Plaintiff's motion.

## III.  DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

In light of the fact that Plaintiff did not file her Motion for Leave to File a Second Amended Complaint until after Defendant's Motion to Dismiss was fully briefed and the fact that Plaintiff's Second Amended Complaint raises several of the same claims raised in her First Amended Complaint, the Court will consider Defendant's motion to dismiss as it applies to Plaintiff's Second Amended Complaint.  As an initial matter, the Court dismisses as moot Shire's motion to dismiss Plaintiff's Ohio public policy and Texas statutory discrimination claims (Counts 3 and 5 in Plaintiff's First Amended Complaint), as Plaintiff dropped these claims with her Second Amended Complaint.  This leaves: (1) Defendant's motion to dismiss Plaintiff's Ohio Rev. Code § 4112.02 gender discrimination claim (Count 1 in Plaintiff's First and Second Amended Complaints) pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure; and (2) Defendant's motion to dismiss Plaintiff's Title VII gender discrimination claim (Count 4 in Plaintiff's First and Second Amended Complaints) pursuant to

10

Rule 12(b)(6).  As to Plaintiff's Title VII claim, Defendant alternatively moves for summary

judgment.

### A.    Claim for Gender Discrimination Under Ohio Rev. Code § 4112.02 (Count 1)

Defendant moves to dismiss Plaintiff's failure to hire Ohio Rev. Code § 4112.02 gender

discrimination claim only to the extent that it "purports to allege that Defendant's denial of

Plaintiff's request to transfer from Texas to Ohio violated . . . [§] 4112.02." (Doc. 18 at 1.)

Defendant does not challenge this claim to the extent it alleges that Shire's later failure to hire

Plaintiff for the position Plaintiff applied for in Ohio constituted discrimination.

### 1.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) authorizes dismissal of a complaint for "lack of jurisdiction over the

subject matter."  Fed. R. Civ. P. 12(b)(1).  When considering a motion to dismiss based on both

Rules 12(b)(1) and 12(b)(6), the Court must first consider the 12(b)(1) motion as the 12(b)(6)

motion becomes moot if the Court does not have jurisdiction.  Moir v. Greater Cleveland Reg'l

Transit Authority, 895 F.2d 266, 269 (6th Cir. 1990) (citing Bell v. Hood, 327 U.S. 678 (1946)).

The plaintiff has the burden of proving jurisdiction to survive a 12(b)(1) motion.  Id.

Though Defendant moves to dismiss Plaintiff's Ohio Rev. Code § 4112.02 gender

discrimination claim pursuant to Fed. R. Civ. P. 12(b)(1), Defendant offers no argument as to

why this Court lacks jurisdiction.  The Court nonetheless considers the question of jurisdiction,

construing Defendant's motion as a facial attack on Plaintiff's complaint.  In a 12(b)(1) motion

that facially attacks a complaint, the Court must consider the allegations of the complaint to be

true.  Id.

Bachochin alleges that she is a resident of the State of Ohio and Shire is a foreign corporation.  (Doc. 21-2, ¶¶ 1, 2.)  Bachochin also alleges that the amount in controversy exceeds seventy-five thousand dollars.  (Doc. 21-2, ¶ 4.)   Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(2) due to diversity of citizenship.[8]  The Court also has jurisdiction pursuant to 28 U.S.C. § 1331[9] over all state law claims Bachochin raises because Bachochin also brings a claim based on federal law.  Defendant's motion to dismiss Count 1 of Plaintiff's Second Amended Complaint is hereby denied.

## 2.      Motion to Dismiss for Failure to State a Claim

Defendant alternatively moves to dismiss Plaintiff's O.R.C. § 4112.02 claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.'"  Dubay v. Wells, 506 F.3d 422, 427 (6th Cir. 2007) (quoting Ricco v. Potter, 377 F.3d 599, 602 (6th Cir. 2004)).  "In analyzing the complaint, all the factual allegations must be viewed in the light most favorable to the plaintiff and the plaintiff must receive the benefit of all reasonable inferences from the facts in the complaint."  Id. (citing Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist., 428 F.3d 223, 228

---

[8] Section 1332 states that "[t]he district courts shall have original jurisdiction over all civil matters where the amount in controversy exceeds the sum or value of seventy-five thousand dollars . . . and is between citizens of a state and citizens or subjects of a foreign state."  28 U.S.C. § 1332 (a)(2).

[9] Section 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

(6th Cir. 2005)).  "Only well-pleaded facts, however, must be taken as true.  The trial court need not accept as true legal conclusions or unwarranted factual inferences." <u>Lewis v. ABC Business Serv., Inc.</u>, 135 F.3d 389, 405 (6th Cir. 1998) (citing <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987)).

Defendant argues that Plaintiff cannot state a claim of discrimination under Ohio law based on the company's denial of her transfer request because Plaintiff would have to bring that claim under Texas law rather than Ohio law.  The Court must therefore resolve whether Ohio law, as Plaintiff argues, or Texas law, as Defendant argues, governs Plaintiff's claim.

In exercising its diversity jurisdiction, a federal court must apply the substantive law of the forum state.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 US 487, 496 (1941).  The Ohio Supreme Court has held that the Restatement (Second) of Conflicts of Laws governs choice of law questions in Ohio.  <u>Morgan v. Biro Mfg. Co., Inc.</u>, 474 N.E.2d 286, 288, 289 (1984); <u>Reilly v. Alcan Aluminum Corp.</u>, 181 F.3d 103, 1999 WL 313879, at *3 (6th Cir. May 5, 1999). Section 145 the Restatement provides the framework for the analysis, beginning with the general principle that "the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties" should be applied.  Restatement (Second) of Conflicts of Laws, § 145(1). Section 145 then lists a number of factors that courts should weigh when considering that question, including:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflicts of Laws, § 145(2).

In the instant case, the balance of these factors weighs in favor of applying Texas law to a claim of gender discrimination based upon Shire's denial of Plaintiff's transfer request. Beginning with the first factor, the Court finds that the injury occurred in Texas. Bachochin learned that her request for a transfer would be denied while she was in Texas and as a result was forced to resign from her position in Texas. Additionally, the underlying injury that Bachochin alleges – the receipt of the discriminatory performance ratings – occurred while she was in Texas working in the Texas sales position. Accordingly, the first factor demonstrates a greater nexus between the alleged injury and Texas.

The same is true with regard to the second prong – the place where the conduct causing the injury occurred. Citing her allegation that under Shire's system, the decision maker for her transfer request would have been the gaining manager in Ohio, Bachochin alleges that the conduct leading to the denial of her transfer request occurred in Ohio. However, Plaintiff does not allege that in her case, the decision was actually made by the Ohio manager. Instead, she alleges that when she requested the transfer in Texas, Shire representatives informed her that under company policy she was ineligible due to her performance ratings, which she received while in Texas. Accordingly, the true conduct causing her injury appears to have been the allegedly discriminatory appraisal of her performance. See Stone v. Jo-Ann Stores, Inc., No. 5:99CV1474, 1999 U.S. Dist. LEXIS 22281, at *2 (N.D. Ohio Dec. 7, 1999) (finding that Texas law rather than Ohio law should apply to the plaintiff's age discrimination and wrongful discharge claim, despite the fact that the decision to discharge the plaintiff occurred at the defendant company's headquarters in Ohio, where the plaintiff was a Texas resident, had worked

14

for the defendant company in Texas up until his discharge, and was allegedly terminated due to his violation of the company's non-discrimination policy while working in Texas).

Turning to the third factor, though Shire is not incorporated or headquartered in Texas, this factor does not necessarily weigh in favor of Ohio over Texas. There is no indication that Shire has any greater ties to Ohio than to Texas. Additionally, though Plaintiff now resides in Ohio, during the time period in question, and indeed throughout her career at Shire, she resided in Texas. On balance, the third factor falls slightly towards the application of Texas law.

For similar reasons, the fourth and final factor favors the conclusion that Texas law governs Bachochin's claim to the extent that it challenges Shire's failure to transfer her to a position in Ohio. The relationship between Shire and Bachochin is centered in Texas. Bachochin spent her entire tenure with Shire as a sales representative in the Company's Texas division. She was hired in Texas, was placed in charge of defined sales territories in Texas, received her performance reviews in Texas, and resigned in Texas.

The Court therefore finds that Texas rather Ohio law governs any potential state law challenge to Shire's failure to transfer Bachochin to a position in Ohio and Bachochin cannot state a gender discrimination claim based on this practice under Ohio law. Accordingly, the Court dismisses Plaintiff's Ohio Rev. Code § 4112.02 gender discrimination claim, Count 1 of Plaintiff's Second Amended Complaint, but does so only to the extent that it could be construed as challenging Shire's denial of Bachochin's transfer request. See Reilly, 181 F.3d 103, 1999 WL 313879 , at *3; Partin v. Telxon Corp., No. C-l-98-503, 2001 U.S. Dist. LEXIS 25181, at *17-18 (S.D. Ohio June 25, 2001). To the extent Count 1 is based on Shire's later decision not to hire Bachochin for the open sales position in Ohio, that count remains viable.

15

**B.     Title VII Gender Discrimination Claim (Count 4)**

Shire moves to dismiss Bachochin's Title VII gender discrimination claim on several grounds.  First, to the extent that Bachochin bases her Title VII claim on Shire's failure to hire her for the Ohio sales position for which she applied after resigning, Shire moves to dismiss on the basis that Bachochin has yet to receive a right to sue letter for this claim from the EEOC.  As a prerequisite to filing a Title VII claim, an individual must first file a timely charge with the EEOC and receive a notice of right to sue.  42 U.S.C. § 2000e-5(f)(1).  After receiving such notice, the individual has ninety days within which to file an action.  Id.  Plaintiff received the necessary right to sue letter regarding her charge of discrimination based on Shire's failure to hire her for the Ohio sales position on January 31, 2007 and has attached it to her Second Amended Complaint, thereby curing the alleged default.  Accordingly, the Court denies Shire's motion to dismiss on that ground.

Shire next moves to dismiss Bachochin's Title VII claim pursuant to Fed. R. Civ. P. 12(b)(6) to the extent it alleges that Shire violated Title VII by denying Bachochin's transfer request because Bachochin failed to file suit within ninety days of receipt of her first right to sue letter from the EEOC.  Bachochin submitted a claim of discrimination challenging Shire's denial of her transfer request with the EEOC Dallas office on January 9, 2006.  (See Second Am. Compl., Ex. A.)  She received two notice of right to sue letters as to that claim.  The first notice, which Bachochin received on March 24, 2006, stated that the reason for dismissal of Bachochin's claim was that the "Charging Party Refused to Cooperate."  (See First Am. Compl., Ex. B, doc. 6-4; Proposed Second Am. Compl., Ex. B, doc. 21-5.)  Bachochin received the second notice on June 16, 2006.  (See First Am. Compl., Ex. C, doc. 6-5; Proposed Second Am.

16

Compl., Ex. C, doc. 21-6.)  That time, the notice stated that the EEOC was dismissing

Bachochin's claim not because of her failure to cooperate but rather because the agency was

"unable to conclude that the information obtained establishes violations of the statutes."  (Id.)

Bachochin filed the instant suit on July 24, 2006, within ninety days of the second, but not the

first right to sue notice.

Defendant claims that the ninety-day statute of limitations on Plaintiff's claim began to

run as of receipt of the first letter, citing Santini v. Cleveland Clinic of Florida, 232 F.3d 823

(11th Cir. 2000) for support.  In Santini, the Plaintiff received an undated notice of right to sue

from the EEOC.  The plaintiff brought the error to the attention of the EEOC and the agency

issued a second, corrected notice.  The plaintiff filed suit within ninety days of receipt of the

second notice but more than ninety days after receipt of the first notice.  Id. at 824.  The

defendant moved for summary judgment and the district court dismissed the plaintiff's federal

discrimination claims as untimely, and the Eleventh Circuit affirmed the district court's holding,

stating that:

> Title VII and ADEA actions may not be brought more than 90 days after a
> complainant has adequate notice that the EEOC has dismissed the Charge.  See,
> e.g., Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339-41 (11th Cir. 1999).
> A second Notice tolls the limitation period only if the EEOC issues such Notice
> pursuant to a reconsideration on the merits under 29 C.F.R. § 1601.21(b), (d).
> See, e.g., Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 557 (11th Cir.
> 1997) ("[A] second EEOC letter ... [is] not effective if there [is] no
> reconsideration") (citing Gonzalez v. Firestone Tire & Rubber, 610 F.2d 241, 246
> (5th Cir.1980)).  Here, the EEOC reissued a Notice merely to correct a technical
> defect rather than pursuant to a reconsideration of the Charge.  Because the
> issuance of a second Notice on March 2, 1998 is immaterial, the district court did
> not err in finding that Santini's federal claims were time-barred.

Id. at 825 (footnote omitted).

17

Plaintiff argues in her opposition to Defendant's Motion to Dismiss that the second right to sue notice that she received in this case amounted to a reconsideration on the merits.  Indeed, the differing bases cited by the EEOC for dismissal of Plaintiff's charge in the two letters suggests that the EEOC did reconsider the merits of Plaintiff's charge.  Defendant cites evidence outside the allegations contained in Plaintiff's First and Second Amended Complaints to demonstrate that the EEOC did not in fact reconsider Plaintiff's charge on the merits.  However, on a 12(b)(6) motion, the Court must only consider the Plaintiff's complaint and any pleadings attached thereto.  Based on those pleadings alone, the Court does not find Plaintiff's complaint to have been untimely filed.  Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's Title VII claim pursuant to Rule 12(b)(6).

Shire alternatively moved for summary judgment as to Plaintiff's Title VII claim. Bachochin opposes this motion and moves for additional time to develop the factual record pursuant to Fed. R. Civ. P. 56(f).  At the time Bachochin filed her opposition to Defendant's Motion to Dismiss, the close of the discovery period was still several months away.  As the basis for her request for time to conduct additional discovery, Plaintiff relies on the affidavit of her attorney's officer manager indicating that Plaintiff's attorney was still attempting to schedule the deposition of Shire's Vice President of Sales.  The Court agrees with Plaintiff that at the time Defendant filed its Motion to Dismiss, the inclusion of a motion for summary judgment as to Plaintiff's Title VII claim was premature.  The Court therefore denies without prejudice Defendant's motion for summary judgment as to Plaintiff's Title VII claim.  Defendant has indicated that it plans to file a motion for summary judgment as to all of Plaintiff's claims. Defendant may include in that motion a renewed motion for summary judgment as to Plaintiff's

18

Title VII claim.  At this point, the discovery period has closed and the factual record should be fully developed, allowing Plaintiff a better opportunity to respond to a motion for summary judgment.

## IV.    CONCLUSION

The Court hereby **GRANTS** Plaintiff's Motion for Leave to File a Second Amended Complaint (doc. 21)[10] **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss (doc. 18).  Specifically, the Court dismisses, pursuant to Rule 12(b)(6), Count 1 of Plaintiff's Second Amended Complaint to the extent that it purports to allege that Defendant's denial of Plaintiff's request to transfer from Texas to Ohio violated Ohio Rev. Code § 4112.02. The Court additionally denies Defendant's 12(b)(1) motion to dismiss Count 1 for lack of subject matter jurisdiction and Defendant's 12(b)(6) motion to dismiss Count 4 for failure to state a claim.  Further, the Court denies without prejudice Defendant's motion for partial summary judgment and denies as moot all remaining portions of Defendant's Motion to Dismiss.

IT IS SO ORDERED.

                           ___s/Susan J. Dlott_____
                           Susan J. Dlott
                           United States District Judge

---

[10] Plaintiff is further ordered to file her Second Amended Complaint, attached as Exhibit 1 to her Motion for Leave to File a Second Amended Complaint.